**United States District Court**
**Southern District of Ohio**
**Western Division**

FILED
KENNETH J. MURPHY
CLERK

03 APR -1  AM II: 22

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST DIV. CINCINNATI

R. CHRISTOPHER WEST,
      Plaintiff,

vs.

PAUL REVERE LIFE INSURANCE COMPANY,
      Defendant.

No.  C-1-01-824
(Weber, J.; Sherman, M.J.)


**REPORT AND RECOMMENDATION[1] THAT
PLAINTIFF'S MOTION TO REVERSE ADMINISTRATIVE DECISION (Doc. 12)
BE DENIED**

---

      This matter is before the Court on a motion by Plaintiff, R. Christopher West, to reverse a decision of Defendant, the Paul Revere Life Insurance Company, denying Plaintiff's claim for disability benefits.  (Doc. 12).  Defendant filed a memorandum in opposition to the motion (Doc. 16), to which Plaintiff filed a reply (Doc. 19).  A hearing was conducted on November 14, 2002.  The matter is ripe for review.

      Plaintiff  brings this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*.  Defendant acts as the administrator of an insurance policy under which Plaintiff seeks relief.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND AND PROCEDURAL HISTORY

      Norton Healthcare, Inc. (Norton), a regional not-for-profit health care delivery system, hired West in May 1999 to serve as senior vice president for hospital services.  (PRL CL

---

    [1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

*21*

00008).[2]   Plaintiff had previously worked for Norton for a period of nine years and had worked for a health care organization in Cincinnati for nine years after that. (PRL CL 00014).  When the Cincinnati organization was bought out, Plaintiff notified Norton that he was looking for employment; he was hired on the spot without an interview.  (*Id.*)

The position with Norton required an ability to engage in rigorous and spontaneous oral and written communication.  (*See* Doc. 12, p. 13; PRL CL 00024).  Soon after his hire date, Plaintiff's colleagues noted that Plaintiff was exhibiting difficulties in his communication abilities and skills.  (PRL CL 00024).  At his employer's request, Plaintiff underwent a diagnostic consultation at the Mayo Clinic, where he was diagnosed with "Expressive Language Disorder, Reading Disorder and Disorder of Written Expression," also referred to as "dyslexia." (PRL CL 00011, 00017).  Plaintiff's examining physician, B. C. Chamberlin, M.D., released Plaintiff to return to his position as senior vice president noting that Plaintiff would require "extensive complementary accommodations and administrative assistance in written and oral communication duties, that ultimately would result in significant revision of the job description."  (PRL CL 00011).  Norton determined that Plaintiff could not perform the necessary and essential functions of his job and terminated Plaintiff's employment on February 4, 2000, nine months after Plaintiff was hired. (PRL CL 00008).

On November 9, 2000, Plaintiff filed a claim for benefits under a disability insurance policy,  Policy No. 0102584962 (*see* Doc. 10, Ex. B), which was issued by Defendant. (PRL CL 0007).  In his claim, Plaintiff stated that his developmental disorder was discovered during his employment with Norton and that his medical condition prevented him from performing the essential functions of his position with Norton.  (PRL CL 00009).

On January 10, 2001, Plaintiff was advised, by letter, that his claim was denied, that his claim was governed by ERISA, and that he had a right to appeal. (PRL CL 00039-40). The explanation in the letter as to why Plaintiff's claim was denied is somewhat unclear. The letter defined "Total Disability" as defined in the policy under which Plaintiff was covered.  (PRL CL  00039).  The letter suggested that Plaintiff had "life long disorders" which only became apparent with his recent position with Norton.  (*Id.*)  It was also pointed out that Plaintiff received a different type of support system at his previous employment than he received at Norton and that Plaintiff himself admitted he was "not a good fit" at Norton. The letter concluded that this situation did not constitute a "disability" on Plaintiff's part. (PRL CL 00040).

---

[2]  References are to the administrative claim file, which was stipulated to by the parties and filed with the Court on May 21, 2002. (Doc. 10).

On May 23, 2001, Plaintiff filed an administrative appeal from the denial of his claim. (PRL CL 00048). He submitted additional materials including the report from a later psychological evaluation. The report indicated that Plaintiff's condition had not deteriorated and that no further treatment or evaluation was required. (PRL CL 00051).

Following review, Defendant upheld the determination that Plaintiff was not eligible for Total Disability Benefits under the terms of his policy. (PRL CL 00062-64). The nub of this second decision was that Plaintiff had a developmental language disorder, "referred to as dyslexia with dysgraphia which essentially translates to difficulties with oral word decoding or reading and spelling, punctuation and graphomotor control issues on the expressive end." (*Id.*) This decision found Plaintiff's condition rendered him virtually incapable of performing his position with Norton, but did not render Plaintiff incapable of performing his past positions, or the important duties of his occupation. The decision was also based upon the observation that Plaintiff's condition was a lifelong problem that was manifested long before the date of issue of his policy. (*Id.*)

Plaintiff initiated the present action by filing a complaint pursuant to § 502(d)(1) of ERISA, 29 U.S.C. § 1132(d)(1). (Doc. 1). He maintains that the decision to deny benefits was arbitrary and capricious. He seeks the payment of disability benefits beginning on the 181st day after his last day of work, or August 5, 2000, plus interest, and a judgment declaring that he is entitled to receive future benefits until January 24, 2009, when he reaches the age of 65, or until he is no longer disabled under the terms of the policy.

On August 1, 2002, Plaintiff filed a Motion to Reverse Administrative Decision. (Doc. 12). Plaintiff contends in part that defendant breached its fiduciary duty of loyalty to plan participants. *See Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542 (6th Cir. 1999). He further contends that defendant's conclusion that Plaintiff does not suffer from a "sickness" is unsupported by the medical evidence. Plaintiff maintains that the policy does not require that an insured must be unable to perform the important duties of his occupation without any accommodation and, thus, any reference to "accommodation" is irrelevant. Additionally, Plaintiff states that defendant erred in denying benefits on the ground that the alleged disability was a "pre-existing" condition where the condition did not manifest itself until after Plaintiff began his employment with Norton.

With respect to the applicable standard of review, Plaintiff maintains that the decision to deny benefits was erroneous under either the *de novo* or the arbitrary and capricious standard of review. He further maintains that the Court must consider defendant's conflict of interest as both decision maker regarding granting or denying benefits and payor if benefits are granted. *See Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998).

3

In its memorandum in opposition to the motion to reverse the administrative decision (Doc. 16), defendant states first that the arbitrary and capricious standard of review should be applied to its decision to deny Plaintiff's claim for disability benefits. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845 (6th Cir. 2000). Defendant then states that its decision was reasonable in light of the medical evidence.

In reply, Plaintiff reasserts that he is entitled to benefits under the policy. (Doc. 19).

## II. STANDARD OF REVIEW

The Court reviews de novo a denial of benefits under an ERISA plan "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *University Hosps.*, 202 F.3d at 845. If an administrator has such discretionary authority, the Court reviews the denial of benefits under the arbitrary and capricious standard. *Firestone Tire & Rubber Co.*, 489 U.S. at 111; *University Hosps.*, 202 F.3d at 845.

The arbitrary and capricious standard applies in this case because the policy clearly requires a claimant to present "satisfactory written proof of loss." (Doc. 10, Ex. B at 16). *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (en banc); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996); *see also Osborne v. Cyprus Mountain Coals Corp.*, No. 97-6344, 1998 WL 833769, *2 (6th Cir. Nov. 19, 1998) (holding that policy language mandating "satisfactory written proof" of each of the elements of proof of loss was sufficient to confer discretionary authority on the plan administrator).

The principles in play when applying the arbitrary and capricious standard include the following:

1.   A denial of benefits resulting from a plan administrator's interpretation or construction of an ERISA plan "must be affirmed unless it is arbitrary and capricious." *Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000).

2.   "A decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan." *Shelby County Health Care Corp.*, 203 F.3d at 933.

3.   A denial of benefits must be upheld "if it is rational in light of the plan's provisions. *Shelby County Health Care Corp.*, 203 F.3d at 933. Stated differently, '[w]hen it is possible to offer a reasoned explanation ... for a particular outcome, that outcome is not arbitrary or capricious.'" *University*

*Hosps.*, 202 F.3d at 845 (quoting *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 693 (6th Cir. 1989), *cert. denied*, 495 U.S. 905 (1990)).

4.    "[A] plan administrator must discharge its duties with respect to the plan 'in accordance with the documents and instruments governing the plan.'" *Shelby County Health Care Corp.*, 203 F.3d at 934 (quoting in part *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990)) (other citation omitted).

5.    "In interpreting the provisions of a plan, a plan administrator must adhere to the plain meaning of its language, as it would be construed by an ordinary person." *Shelby County Health Care Corp.*, 203 F.3d at 934.

6.    If an apparent conflict of interest exists – as in the instant case – the conflict of interest should be taken into account as a factor in determining whether the decision was arbitrary and capricious. *University Hosps.*, 202 F.3d at 846 (quoting in part *Davis*, 887 F.2d at 694); *see Firestone Tire & Rubber Co.*, 489 U.S. at 115.

## III. DISCUSSION

Defendant's decision to deny Plaintiff's claim for long-term disability benefits was rational in light of the policy provisions and was neither arbitrary nor capricious, even taking into account Plaintiff's claim of Defendant's conflict of interest.  A review of the policy supports this determination.

The policy provides, in part, the following definitions:

**"Sickness"** means sickness or disease which first manifests itself after the Date of Issue and while your Policy is in force.

\* \* \*

**"Your Occupation"** means the occupation or occupations in which You are regularly engaged at the time Disability begins.

**"Total Disability"** means that because of Injury or Sickness:

a. you are unable to perform the important duties of Your occupation; and
b. You are receiving Physician's Care. We will waive this requirement if we receive written proof acceptable to Us that further Physician's

5

Care would be of no benefit to you.

(Doc. 10, Ex. B at 6).

The pivotal issue in this case is whether "because of ... sickness," Plaintiff was "unable to perform the important duties of [his] occupation." While the record supports a finding that Plaintiff is unable to perform the particular duties of his job with Norton, Defendant maintains that Plaintiff has not shown that he had a sickness or was unable to perform the important duties of his occupation as a hospital administrator. The Court agrees.

Here, Plaintiff admitted that his developmental language disorder had been a lifelong problem and not one that first manifested itself while working for Norton. (*See* PRL CL 00012, 00016, 00017, 00063). While it may have seemed like a new problem, Plaintiff actually had been compensating for it for years. (*See* PRL CL 00017). In fact, it was noted that his father had similar problems as did his daughter. (*Id.*)

Plaintiff's "sickness" manifested itself long before the date of issue of the policy. It was therefore rational for the administrator to conclude that Plaintiff did not have a "sickness" as defined by the policy. (*See* Doc. 10, Ex. B at 6).

It was also rational for the administrator to find that while Plaintiff was unable to perform the important duties of his last position (at least without substantial accommodations), it was not established that Plaintiff could not perform the essential duties of his *occupation*. He had been performing the essential duties of his *occupation* for at least the last eighteen years while successfully compensating for his condition. However, because of the unique requirements of his last position with Norton, Plaintiff was unable to maintain this success in this particular job.

Plaintiff has not shown that the decision to deny benefits was irrational, arbitrary or capricious, or made in bad faith. Notwithstanding his condition, Plaintiff has had a career in hospital administration since 1972. (*See* PRL CL 00014). The president of Norton described Plaintiff as "a professional, seasoned and reasonably articulate health care management executive." (PRL CL 00024). Even though Plaintiff's dyslexia may have prevented him from performing the essential functions of his particular job with Norton, Plaintiff has not shown that his dyslexia was a sickness as defined by the policy nor that this condition rendered him unable to perform the important duties of his occupation as a hospital administrator.

## IV. CONCLUSION

In sum, the Court concludes that Defendant did not act arbitrarily and capriciously in

6

denying Plaintiff's claim for disability benefits.

It is therefore **RECOMMENDED** that Plaintiff R. Christopher West's Motion to Reverse Administrative Decision (Doc. 12) be **DENIED**, that judgment be entered in favor of Defendant Paul Revere Life Insurance Company, and that this case be **DISMISSED** from the docket of this Court.


Jack Sherman, Jr.
United States Magistrate Judge

7

# UNITED STATES DISTRICT COURT
## Southern District Of Ohio
### Western Division

R. CHRISTOPHER WEST,
     Plaintiff,

                                    No. C-1-01-824
                                    (Weber, J.; Sherman, M.J.)

vs.

PAUL REVERE LIFE INSURANCE COMPANY,
     Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after being served with a copy thereof. That period may be extended by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the Report and Recommendation objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).