NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 04-3507

**FILED**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JUL 0 6 2005

LEONARD GREEN, Clerk

| | |
|---|---|
| R. CHRISTOPHER WEST, ) | ON APPEAL FROM THE |
| ) | UNITED STATES DISTRICT |
| *Plaintiff-Appellant*, ) | COURT FOR THE SOUTHERN |
| ) | DISTRICT OF OHIO |
| v. ) | |
| ) | **FILED** OPINION |
| THE PAUL REVERE LIFE INSURANCE ) | |
| COMPANY, ) | JUL 6 2005 |
| ) | |
| *Defendant-Appellee*. ) | JAMES BONINI, Clerk |

BEFORE:   COLE and SUTTON, Circuit Judges; ZATKOFF, District Judge*

**R. GUY COLE, JR., Circuit Judge.** Plaintiff-Appellant R. Christopher West appeals the district court's order adopting the magistrate judge's recommendation to affirm Defendant-Appellee Paul Revere Life's ("Revere Life") denial of disability benefits. The district court held that Revere Life's denial of benefits was not arbitrary and capricious because the administrator appropriately construed the plan to disqualify West because West did not show that he had a sickness that manifested itself after the date of issue of his policy and because he did not show that he was unable to perform the important duties of his occupation as hospital administrator. Because the plan administrator's determination was neither arbitrary nor capricious, we **AFFIRM** on the grounds that West did not show that he had a sickness that manifested itself as required by the language of the policy.

---

*The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

*No. 04-3507*
*West v. Paul Revere Life*

## I. BACKGROUND

Plaintiff-Appellant, R. Christopher West, was employed as the senior vice-president for hospital services by Norton Healthcare, Inc., from May 1999 through February 2000. Prior to such employment, West worked as an administrator for various health care organizations for approximately eighteen years.

While at Norton, West exhibited difficulties with written and spoken communication. Upon Norton's request, West underwent extensive diagnostic testing at the Mayo Clinic medical facility. Mayo Clinic physicians diagnosed West with Expressive Language Disorder, Reading Disorder, and Disorder of Written Expression. The examining physician noted that West would need "extensive complementary accommodations and administrative assistance in written and oral communication duties, that ultimately would result in significant revision of the job description." Based on this diagnosis and West's examining physician's statement indicating West would require "extensive complementary accommodations and administrative assistance in written and oral communication duties, that ultimately would result in significant revision of the job description," Norton concluded that West would be unable to perform the necessary and essential job functions, and terminated him.

Following his termination, West filed a claim for disability benefits under an insurance policy covering Norton employees. The administrator of the policy denied West's claim, issuing a letter explaining the denial, as well as West's appeal rights. According to the letter, West's claim was denied because the company determined that his sickness was a "life long disorder[]" rather than one that arose during the time of his coverage. In addition, the letter indicated that benefits were not

*No. 04-3507*
*West v. Paul Revere Life*

appropriate because West was not totally disabled as he could still perform the duties of his "occupation" as a hospital administrator with the appropriate accommodations.

West appealed the denial of his claim through Revere Life's administrative appeals' process. The insurance company upheld its initial denial of benefits, explaining that West was not eligible for coverage because: (1) his condition did not constitute a "sickness" for purposes of the insurance policy due to the fact that his condition was a "lifelong problem," (2) he was not totally disabled because he could perform the important duties of his occupation with accommodation, (3) he was never able to perform the duties required by Norton Healthcare, and (4) Revere Life's neuropsychologist did not believe West was "totally incapable of performing his essential occupational functions."

West filed the present appeal in district court pursuant to § 502(d)(1) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(d)(1). On recommendation of the magistrate judge, the district court held that Revere Life's denial of benefits was not arbitrary and capricious because West did not show that he had a sickness that manifested itself after coverage or that he was unable to perform the important duties of his occupation as hospital administrator. The court therefore denied West's motion to reverse the administrator's decision, entered judgment in favor of Revere Life, and dismissed the case. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

We review the district court's judgment in an ERISA case *de novo*. *Killian v. Healthsource Provident Admin'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998). Ordinarily, the district court reviews

*No. 04-3507*
*West v. Paul Revere Life*

an administrator's decision to deny insurance benefits *de novo*. *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 659-60 (6th Cir. 2004). However, where the administrator has discretion to determine eligibility for benefits or to construe the plan terms, the district court reviews the decision using the arbitrary and capricious standard. *Killian*, 152 F.3d at 520.

West argues that the district court erred in applying the arbitrary and capricious standard rather than the *de novo* standard because the terms of the plan did not indicate "to whom satisfactory proof of loss should be given" and consequently were insufficient to confer discretion on the plan administrator. The terms of the contract must indicate to whom proof of loss should be given in order to grant discretion to the plan administrator. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555-56 (6th Cir. 1998) (*en banc*). The plan terms state that benefits will be granted "[a]fter we receive satisfactory proof of loss." The term "we" is sufficient to indicate that it is the insurance company that must receive satisfactory proof of loss. *Cf. Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380-81 (6th Cir. 1996) (holding requirement that claimant submit satisfactory proof of loss "to us" sufficient to confer discretion to plan administrator). The language is therefore sufficient to confer discretion to the plan administrator, and the arbitrary and capricious standard is thus appropriate in this case.

West also argues that the plan administrator had a conflict of interest, which must be taken into account when reviewing Revere Life's denial of benefits. There is an inherent conflict of interest when a plan administrator determines whether an individual qualifies for insurance benefits. *Killian*, 152 F.3d at 521. As noted by the district court, this conflict does not alter the standard of

*No. 04-3507*
*West v. Paul Revere Life*

review, but it is a factor this Court considers in determining whether the administrator's actions were arbitrary and capricious. *Id.*

**B. Did West's condition constitute a "sickness" under the insurance policy?**

Although West's learning disorder constituted a sickness under the policy, West is not entitled to disability benefits because the disorder manifested itself prior to the date on which the policy covered West. The policy defines sickness as a condition that "first manifests" after the policy is issued. West argues that his condition did not manifest itself prior to the date of issue of his policy because the sickness had not yet been diagnosed. Revere Life counters this argument, claiming that the condition had manifested itself prior to coverage because West displayed signs and symptoms of the condition and had taken steps to compensate for it. The question for this Court, therefore, is whether the plain meaning of the word "manifests" is consistent with Revere Life's interpretation in this context to mean displaying signs or symptoms of a disease rather than obtaining a specific diagnosis of a disease.

When interpreting the terms of an insurance plan, the administrator must interpret words according to their plain meaning. *Perez*, 150 F.3d at 556. *Merriam Webster's Collegiate Dictionary* defines manifest as "to make evident or certain by showing or displaying." *Merriam Webster's Collegiate Dictionary* 707 (10th ed. 1993). Consistent with this definition, Revere Life determined that a condition "manifests" itself when it is evident due to apparent signs or symptoms of that condition. To hold that a condition only manifests itself upon diagnosis runs contrary to the plain meaning of the word "manifests." A disorder becomes evident when there are significant signs and symptoms of the sickness, not when it is officially diagnosed by a medical professional. As such,

*No. 04-3507*
*West v. Paul Revere Life*

the administrator appropriately found that West's condition manifested itself prior to coverage since West displayed signs and symptoms of the disease prior to such time. *Cf.* Black's Law Dictionary 974 (7th ed. 1999) (defining "manifestation theory" for insurance purposes as "[t]he doctrine that coverage for an injury or disease falls to the policy in effect when the symptoms of the covered injury or disease first appear."). West told his physician that he has always had difficulty pronouncing certain words, that his vocabulary is somewhat limited, that he had trouble spelling words when he was in school, and that he had been compensating for his difficulties with words and language his entire life. In addition, West never challenged the claim representative's description of a phone call in which he admitted that in 1991 and 1992 "he knew that he had a problem [and] he worked [with a] speech therapist to overcome difficulties." Because West sought speech therapy in 1991 and 1992, he obviously knew that he had a speech problem before signing the application for coverage on October 14, 1992. Accordingly, the plan administrator's determination that West's disorder was a lifelong condition rather than one that manifested itself after coverage was not arbitrary and capricious, and denial of benefits on this basis was not error.

### C. Was West "unable to perform the important duties" of his occupation for purposes of the insurance policy?

Revere also denied West coverage based on its determination that West could still perform the important duties of his occupation with accommodation. West argues that this interpretation of the contract inappropriately added an accommodation requirement to the terms. We need not reach this issue today, as the administrator's determination that West did not qualify for benefits because

*No. 04-3507*
*West v. Paul Revere Life*

his condition had manifested itself prior to coverage was not arbitrary and capricious and provides an adequate basis upon which to affirm the district court's judgment.

### III. CONCLUSION

Because the plan administrator's determination that West was ineligible for coverage because he did not have a condition that manifested itself after plan coverage was not arbitrary and capricious, we **AFFIRM** the judgment of the district court.